**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Stephanie N. Hernández Valentín, personally and on behalf of her minor son, UJAH; and UJAH, a minor,<br><br>Plaintiffs,<br><br>v.<br><br>Department of Education of Puerto Rico; and the Commonwealth of Puerto Rico,<br><br>Defendants. | Case No. 26-cv-1608<br><br>Special Education; Judicial Review; Declaratory Judgment; Compensatory Education; Attorney's Fees and Costs |

**VERIFIED COMPLAINT FOR JUDICIAL REVIEW**

**TO THE HONORABLE COURT:**

**NOW COME** plaintiffs Stephanie N. Hernández Valentín, personally and on behalf of her minor son, UJAH, and minor plaintiff UJAH, through undersigned counsel, and very respectfully state, allege, and pray as follows:

## 1. INTRODUCTION

1. This is a civil action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., for judicial review of the Final Resolution and Amended Order Nunc Pro Tunc issued on August 5, 2026 by Administrative Law Judge Mary Lou de la Luz Quiles in administrative case number QEE-2526-02-09-00609 ("Amended Resolution").

2. Plaintiffs are aggrieved only by the portions of the Amended Resolution that: (a) concluded that UJAH was not denied a free appropriate public education ("FAPE") during the 2024-2025 school year; (b) denied compensatory education for that school year; (c) denied or omitted compensatory relief for PRDOE's failures during the 2025-2026 school year concerning

assistive technology ("AT"), applied behavior analysis ("ABA"), educational-assistant support, psychological therapy, occupational therapy with a sensory approach, dysphagia therapy, and extended-school-year services ("ESY"); and (d) conditioned AT, ABA, and assistant-related matters upon future IEP team agreement without remedying the violations already exhausted and litigated.

3. Plaintiffs do not challenge the Amended Resolution's favorable findings that UJAH was denied a FAPE during the 2025-2026 school year, that Capable Kids Academy, LLC ("Capable Kids") private school was an appropriate placement, or that PRDOE must pay the approved private-school costs for that school year.

4. The Amended Resolution granted the purchase of educational and related services at Capable Kids for the complete 2025-2026 school year, recognized the private placement as appropriate and beneficial, corrected the monthly cost to $6,000, and ordered direct payment to Capable Kids for services from August 2025 through May 2026.

5. Those favorable private-placement and direct-payment determinations are not submitted for review, enforcement, modification, or any form of preliminary relief in this action.

6. This action is limited to judicial review of the denial of FAPE and compensatory education for the 2024-2025 school year and the denial or omission of compensatory relief for related-service and ESY deprivations during the 2025-2026 school year.

7. On September 14, 2026, in the separate administrative case concerning the 2026-

2027 school year,[1] the presiding Administrative Law Judge entered an interlocutory stay-put order maintaining Capable Kids as UJAH's pendency placement at public expense during that proceeding and any later judicial review.

8. Accordingly, plaintiffs request no preliminary injunction or stay-put relief from this Court and do not ask the Court to decide the merits of UJAH's 2026-2027 IEP or placement.

9. With regards to the 2024-2025 school year, ALJ Mary Lou de la Luz Quiles failed to perform the two-part analysis required by Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206-07 (1982).

10. Contrary to Rowley, the ALJ never first determined whether PRDOE complied with IDEA procedures in developing the 2024-2025 IEP and proposed placement, including the requirements for a duly constituted COMPU, accurate present levels, measurable annual goals, parent participation, evaluations, supplementary aids, and prior written notice.

11. Although the ALJ correctly found the 2024-2025 IEP deficient—a finding that alone warranted a denial-of-FAPE determination—she treated Mrs. Hernández's decision to educate UJAH at home as dispositive without first determining whether PRDOE's failure to develop and offer an IDEA-compliant IEP and supported placement caused that decision.

12. The ALJ also failed to apply Endrew F. v. Douglas County Sch. Dist. Re-1, 580 U.S. 386, 399-403 (2017), even after recognizing that the 2024-2025 IEP lacked goals.

---

[1] Administrative case number QEE-2627-02-08-00197 is currently ongoing and being presided by ALJ Javier Abraham Torres Rivera.

13. The ALJ erred by failing to determine whether the 2024-2025 IEP was reasonably calculated to enable UJAH to make progress appropriate in light of his individual circumstances, as required by Endrew F.

14. A parent's resort to homeschooling in response to a deficient program does not relieve the state educational agency of its affirmative responsibility to make FAPE available in a timely manner.

15. The parent's response to PRDOE's procedural and substantive violations of the IDEA did not make the deficient 2024-2025 IEP appropriate, waive UJAH's substantive IDEA rights, or remedy the educational deprivation caused by PRDOE's earlier failures.

16. Plaintiffs seek declaratory and final equitable relief addressing the adverse portions of the Amended Resolution, including one full school year of compensatory education for 2024-2025 and individualized compensatory relief for the related-service and ESY deprivations that occurred during 2025-2026.

17. Plaintiffs do not plead a freestanding challenge to the 2026-2027 IEP or school year.

18. The merits of the 2026-2027 IEP and placement remain exclusively before the administrative forum in QEE-2627-02-09-00197 and are outside the scope of this action.

**JURISDICTION AND VENUE**

19. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and jurisdiction

under IDEA, 20 U.S.C. §§ 1403 and 1415(i)(2)(A), (i)(3)(A).

20. IDEA authorizes an aggrieved party to bring a civil action in a United States district court without regard to the amount in controversy.

21. Plaintiffs also invoke the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

22. The Commonwealth's sovereign immunity is abrogated for violations of IDEA pursuant to 20 U.S.C. § 1403.

23. Venue is proper under 28 U.S.C. § 1391 because the material events occurred in Puerto Rico, plaintiffs reside in this District, defendants are based and operate here, and the administrative proceeding took place in Puerto Rico.

24. The ALJ issued, archived, and notified the Amended Resolution on August 5, 2026.

25. This action is timely under 20 U.S.C. § 1415(i)(2)(B).

26. The adverse issues presented here were raised, developed, and litigated in the administrative proceeding.

27. The Amended Resolution itself identifies the 2024-2025 FAPE controversy and the compensatory claims concerning AT, ABA, an educational assistant, delayed occupational-sensory and dysphagia services, and other requested remedies.

28. Plaintiffs exhausted the available administrative remedies for each error challenged in this action.

## PARTIES

29. Plaintiff Stephanie N. Hernández Valentín ("Mrs. Hernández") is UJAH's mother and legal guardian. She sues personally and on behalf of her minor son.

30. Mrs. Hernández resides with UJAH in the Municipality of Camuy, Puerto Rico.

31. Minor plaintiff UJAH was born in 2019. He is identified in this public filing solely by his initials pursuant to Federal Rule of Civil Procedure 5.2(a)(3).

32. UJAH has disabilities that materially affect his educational performance, communication, behavior, adaptive functioning, sensory processing, and ability to access instruction.

33. His documented conditions include autism spectrum disorder, attention and learning difficulties, speech-and-language needs, sensory and occupational-therapy needs, and dysphagia.

34. UJAH is registered and eligible for PRDOE's Special Education Program under the classification of autism.

35. UJAH is entitled to FAPE, individualized special education, related services, supplementary aids and services, evaluations in all suspected areas of need, and an appropriate placement at public expense.

36. Defendant Department of Education of Puerto Rico ("PRDOE") is the Commonwealth agency responsible for Puerto Rico's public-education and special-education

system and for administering federal IDEA funds.

37. PRDOE is responsible for identifying, evaluating, programming, placing, and providing services to IDEA-eligible children, including UJAH.

38. Defendant Commonwealth of Puerto Rico is included because PRDOE lacks a juridical personality separate from the Commonwealth for purposes of the relief requested.

39. The Commonwealth of Puerto Rico physical address is that of its Department of Justice, located in 677 Calle Teniente César González, Jesús T. Piñero Avenue corner, San Juan, Puerto Rico 00919, and its postal address is P.O. Box 9020192, San Juan, Puerto Rico 00902-0192.

40. The Department of Education is an agency of the Commonwealth of Puerto Rico responsible for providing and administering the public education system in the Commonwealth of Puerto Rico.

41. The physical address of the PRDOE is Urbanización Industrial Tres Monjitas, Avenida Teniente César González, Esquina Calaf, Hato Rey, Puerto Rico, 00919, and the postal address is P.O. Box 190759, San Juan, Puerto Rico 00919-0759.

42. As a recipient of federal funding, the PRDOE is responsible for providing a free appropriate public education suited to UJAH's needs as a student with disabilities.

43. At all relevant times, PRDOE personnel, IEP team members, regional and district officials, the Auxiliary Secretary of Special Education, and administrative representatives acted

within the scope of their authority for defendants.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**IDEA's individualized FAPE requirements**

44. IDEA conditions federal special-education funding on a State's assurance that FAPE is available to every eligible child. See 20 U.S.C. § 1412(a)(1)(A).

45. FAPE consists of special education and related services provided at public expense, under public supervision and direction, without charge, and in conformity with an IDEA-compliant IEP. Id. at § 1401(9).

46. An IEP must state the child's present levels of academic achievement and functional performance; explain how the disability affects access and progress; establish measurable annual academic and functional goals; describe how progress will be measured; and specify the special education, related services, supplementary aids, program modifications, and supports to be provided. Id. at § 1414(d)(1)(A); 34 C.F.R. § 300.320.

47. Under Rowley, adjudication requires two distinct inquiries: first, whether the educational agency complied with IDEA's procedures; and second, whether the individualized program developed through those procedures satisfied IDEA's substantive standard. Rowley, 458 U.S. at 206-07.

48. IDEA's procedures are not technical formalities. They protect individualized decision-making and meaningful parental participation and are designed to produce a substantively

appropriate program.

49. A hearing officer must decide a due-process complaint on substantive grounds based on whether the child received FAPE. See 20 U.S.C. § 1415(f)(3)(E)(i), 34 C.F.R. § 300.513(a)(1).

50. A procedural violation denies FAPE when it impeded the child's right to FAPE, significantly impeded parental participation, or caused a deprivation of educational benefit. See 20 U.S.C. § 1415(f)(3)(E); 34 C.F.R. § 300.513(a).

51. Under Endrew F., an IEP must be reasonably calculated to enable the child to make progress appropriate in light of the child's circumstances. Endrew F., 580 U.S. at 399-403.

52. The IEP must be constructed after careful consideration of the child's present achievement, disability, and potential for growth, and the educational agency must be able to provide a cogent and responsive explanation for its choices. Id.

53. For a child with autism who is not fully integrated in the regular classroom, the IEP must be appropriately ambitious in light of his circumstances and give him a chance to meet challenging objectives; merely nominal or minimal programming is insufficient. Id.

54. The First Circuit applies Endrew F. by asking whether the IEP was individually designed and reasonably calculated to confer meaningful educational benefit in light of the child's circumstances. See C.D. v. Natick Public School District, 924 F.3d 621 (1st Cir. 2019).

55. An IEP team must consider the child's strengths, parental concerns, recent

evaluations, academic and functional needs, positive behavioral interventions when behavior impedes learning, and whether the child needs assistive-technology devices and services. See 20 U.S.C. § 1414(d)(3); 34 C.F.R. § 300.324(a).

56. PRDOE must assess a child in all areas related to suspected disability and conduct an evaluation sufficiently comprehensive to identify all special-education and related-service needs. See 34 C.F.R. § 300.304(c)(4), (6).

57. When PRDOE refuses to initiate or change an evaluation, placement, or FAPE, it must issue prior written notice explaining the refusal, the information relied upon, alternatives considered, and relevant factors. See 20 U.S.C. § 1415(b)(3), (c)(1); 34 C.F.R. § 300.503.

58. PRDOE must ensure that extended school year (ESY) services are available when individually necessary to provide FAPE and may not unilaterally limit their type, amount, or duration. See 34 C.F.R. § 300.106. See also Deal v. Hamilton County Board of Education, 392 F.3d 840, 864–65 (6th Cir. 2004) (reaffirming that school districts cannot predetermine or restrict ESY services based on administrative convenience or inflexible program models); Crawford v. Pittman, 708 F.2d 1028, 1034 (5th Cir. 1983) (holding that state policies that flatly refuse to consider ESY services for students who suffer significant regression violate the federal right to FAPE).

**UJAH's educational profile and identified needs**

59. UJAH was evaluated for autism, registered, and declared eligible for PRDOE's

Special Education Program.

60. His records document significant receptive and expressive language deficits, limited attention, adaptive delays, sensory needs, difficulty following directions, toileting needs, behavioral dysregulation, and a need for highly individualized and structured instruction.

61. Evaluations completed in 2025 identified occupational, communication, sensory, feeding, adaptive, and functional needs requiring intervention.

62. The April 21, 2025 autism evaluation recommended an AT evaluation and IEP team/COMPU consideration of an educational assistant because of UJAH's low adaptive functioning, need for guidance, and safety-related support.

63. The October 21, 2025 psychometric evaluation recommended, among other supports, a reduced group of approximately three to five students, educational-assistant support, a structured intensive program, and ABA-related intervention.

64. On February 10, 2026, psychologist Dr. Eileene R. Adames-Méndez issued a written recommendation for a formal ABA evaluation due to UJAH's emotional dysregulation, impulsivity, attention difficulties, and need for constant guidance.

**The deficient 2024-2025 IEP and resulting home education**

65. PRDOE convened an IEP team meeting[2] on April 19, 2024 to prepare UJAH's IEP for the 2024-2025 school year.

[2] IEP team meetings are known in Puerto Rico as "Comité de Programación y Ubicación (COMPU)" meetings.

66. The IEP team was improperly constituted to propose a regular-classroom program and placement because it lacked a regular-education teacher qualified to address how UJAH could be educated there with appropriate supplementary aids and services.

67. PRDOE's own witness testified during the administrative hearing that the 2024-2025 IEP "did not have goals" and that areas of need would be considered later.

68. The Amended Resolution expressly recounts this testimony but does not analyze its legal significance under 20 U.S.C. § 1414(d), 34 C.F.R. § 300.320, Rowley, or Endrew F.

69. The 2024-2025 IEP did not accurately and comprehensively state UJAH's then-current academic and functional performance.

70. Its description of his academic functioning conflicted with the available information documenting limited attention, dependence, inability to complete tasks, and substantial developmental and functional needs.

71. The 2024-2025 IEP failed to translate UJAH's toileting, communication, behavioral, sensory, adaptive, and academic needs into a complete set of measurable annual goals.

72. For multiple related-service areas, the 2024-2025 IEP relied on generic references to intervention plans rather than integrating measurable educational goals and progress measures into an individualized program.

73. The 2024-2025 IEP omitted an adequate behavioral-support plan notwithstanding behavioral and regulation needs that interfered with learning.

74. The 2024-2025 IEP stated that UJAH did not need assistive technology without an adequate evaluation of that suspected area of need.

75. The 2024-2025 IEP omitted the educational assistant and other specified supplementary supports UJAH needed to access PRDOE's proposed regular classroom.

76. PRDOE stated only that an assistant might be provided "if necessary." That conditional language failed to specify the nature, frequency, duration, or circumstances of the support, did not establish an enforceable IEP service, and improperly subjected UJAH to a "wait-to-fail" condition. See M.C. v. Antelope Valley Union High School District, 858 F.3d 1189, 1194–95 (9th Cir. 2017) (holding t that an IEP offer must be formal, specific, and clear. Indefinite or conditional statements (e.g., offering services "as needed" or outside the written document) fail to create an enforceable IEP commitment and violate IDEA's procedural and substantive guarantees by denying parents a clear offer to accept or challenge)); Deal, 392 F.3d at 864–65 (6th Cir. 2004) (holding that school districts cannot condition or predetermine necessary IEP services based on administrative contingencies or speculative future triggers); Knable ex rel. Knable v. Bexley City School District, 238 F.3d 755, 763 (6th Cir. 2001) (holding that an IEP must contain specific, non-speculative commitments regarding the educational and related services to be provided, and finding that ambiguous or conditional promises do not satisfy the statutory requirement).

77. The program and placement for the 2024-2025 school year were not reasonably calculated to enable UJAH to make progress appropriate in light of his circumstances, as required

by Endrew F., 580 U.S. at 399–401 .

78. Mrs. Hernández was not represented by counsel at the April 19, 2024 IEP team/COMPU meeting and did not understand IDEA's substantive standards, procedural safeguards, prior-written-notice requirements, or her right to challenge an inadequate IEP and placement.

79. Mrs. Hernández' failure to submit a written objection neither cured the deficiencies in the 2024-2025 IEP nor waived UJAH's substantive right to FAPE.

80. Faced with an IEP that did not provide a meaningful individualized program and a placement that lacked required supports, Mrs. Hernández educated UJAH at home during the 2024-2025 school year.

81. Home education was a protective parental response to PRDOE's failure to offer an appropriate IEP and supported placement.

82. Home education was not an informed relinquishment of UJAH's right to FAPE or compensatory relief.

83. PRDOE remained responsible for developing and offering an IDEA-compliant IEP and making FAPE available for the 2024-2025 school year.

84. The statutory duty belonged to the public agency and could not be shifted to the mother based on her response to the deficient offer. See, e.g., M.C. v. Antelope Valley Union High Sch. Dist., 858 F.3d 1189, 1198 (9th Cir. 2017) (holding that the duty to formulate and offer an

appropriate IEP is an affirmative statutory obligation belonging exclusively to the public agency that cannot be waived, forfeited, or shifted onto the parents by virtue of parental inaction, conditional acceptance, or rejection of a deficient proposal); Leggett v. Dist. of Columbia, 793 F.3d 59, 67 (D.C. Cir. 2015) (holding that he district's failure to have an appropriate IEP ready at the start of the school year constitutes a fatal FAPE violation, and the agency cannot shift blame to the parent for failing to "cure" or "work around" the agency's deficient offer); Anchorage Sch. Dist. v. M.P., 689 F.3d 1047, 1055 (9th Cir. 2012) (holding that school districts have an affirmative, non-delegable statutory duty to provide a FAPE to eligible children with disabilities, and that a school district "cannot shift this statutory responsibility to the parents" nor excuse its own inaction by pointing to parental responses, delay, or perceived lack of enthusiasm).

85. The First Circuit has rejected the proposition that withdrawal from a public placement automatically forecloses compensatory education for an antecedent FAPE deprivation. See Maine School Administrative District No. 35 v. Mr. R., 321 F.3d 9, 18-21 & n.5 (1st Cir. 2003).

86. Because PRDOE failed to offer an IDEA-compliant IEP before the 2024-2025 school year began, UJAH was denied a FAPE and lost a full year of appropriate specially designed instruction, peer interaction, structured educational programming, and integrated supports. See Forest Grove School District v. T.A., 557 U.S. 230, 242–45 (2009) (holding that IDEA authorizes private school tuition reimbursement when a public agency fails to offer a timely, appropriate IEP

and public placement prior to the start of the school year).

87. That loss warrants individualized compensatory education reasonably calculated to place UJAH in the position he would have occupied had PRDOE complied with IDEA.

**The 2025-2026 placement and favorable administrative determinations**

88. PRDOE did not timely produce a complete, appropriate IEP and public placement available for UJAH at the beginning of the 2025-2026 school year.

89. Mrs. Hernández visited the proposed public alternatives and rejected them because they lacked the individualized bilingual instruction, reduced group size, sensory environment, curriculum, and supports UJAH required.

90. On July 31, 2025, Capable Kids issued a services proposal for the 2025-2026 school year providing a reduced group, individualized special-education programming, bilingual services, reasonable accommodations, family communication, progress reporting, and related supports.

91. Mrs. Hernández placed UJAH at Capable Kids beginning in August 2025 after PRDOE failed to make an appropriate public placement available.

92. UJAH attended Capable Kids from August 2025 through May 2026 and made documented academic and functional progress.

93. In the Amended Resolution, the ALJ found Capable Kids appropriate and beneficial, granted purchase of its educational and related services for the full 2025-2026 school year, and ordered direct payment at the corrected cost.

94. Plaintiffs accept those favorable findings and remedies and do not submit them for review or enforcement in this action.

**AT, ABA, educational-assistant, psychological, and related-service deprivations**

95. The April 21, 2025 autism evaluation recommended an assistive-technology evaluation and COMPU consideration of an educational assistant to address UJAH's low adaptive functioning and need for educational guidance and safety support. See Administrative Hearing Joint Exhibit 6, at 14.

96. The October 21, 2025 psychometric evaluation recommended placement in a group of three to five students for individualized, intensive instruction; a consistent, organized, and structured educational routine; educational-assistant support; and a behavior-modification plan. See Administrative Hearing Joint Exhibit 13, at 9–11.

97. In her February 10, 2026 letter to the COMPU, psychologist Dr. Eileene R. Adames-Méndez recommended a formal Applied Behavior Analysis (ABA) evaluation as a complement to UJAH's psychological treatment, citing persistent emotional dysregulation, impulsive and defiant behaviors, attention difficulties, and the need for constant guidance and redirection. See Administrative Hearing Joint Exhibit 21, at 2.

98. During IEP team/COMPU proceedings in February 2026, the PRDOE refused or failed to timely authorize the AT and ABA evaluations and did not issue IDEA-compliant prior written notice explaining its decisions.

99. PRDOE failed to make a timely, data-based determination of the type and amount of educational-assistant support UJAH required in the public program proposed by the agency.

100. During the February 11, 2026 IEP team meeting, PRDOE acknowledged that UJAH was owed six compensatory psychological-therapy sessions from the 2024-2025 school year.

101. PRDOE also delayed authorization or commencement of occupational therapy with a sensory approach and dysphagia therapy after those needs were identified.

102. The Amended Resolution listed the AT, assistant, ABA, occupational-sensory, and dysphagia compensatory claims among the issues submitted for decision in case number QEE-2526-02-09-00609.

103. Nevertheless, the ALJ denied compensatory services and merely directed that assistant, AT, and ABA matters be addressed prospectively if the IEP team/COMPU later agreed to the referrals.

104. That conditional direction is not an effective remedy because PRDOE had already refused to agree to referrals and the order provides no deadline, no independent mechanism to resolve renewed refusal, and no compensation for completed deprivations.

105. The District of Puerto Rico has held that unresolved evaluation and assistive-technology claims remain live and justiciable when an IDEA-eligible student can still obtain effective relief. See Arroyo-Delgado v. Department of Education of Puerto Rico, 199 F. Supp. 3d

548, 557-58 (D.P.R. 2016).

**PRDOE's failure to provide 2026 ESY services**

106. Plaintiffs requested that PRDOE provide ESY services for summer 2026 based on individualized evidence of regression and delayed recoupment.

107. Provider questionnaires and Capable Kids records documented significant risks of regression, limited recoupment, losses following breaks, and a need for continuous intervention.

108. PRDOE provided no ESY special-education program or related services during summer 2026.

109. The ALJ recited that ESY had not been provided but treated the issue as academic after the summer passed and awarded no compensatory remedy.

110. The expiration of summer did not moot the claim because compensatory education remained available to replace the educational and related services UJAH should have received.

111. Completed IDEA violations remain reviewable when effectual compensatory relief is available. See Maine School Administrative District No. 35, 321 F.3d at 18-21; Arroyo-Delgado, 199 F. Supp. 3d at 553-58.

**Administrative proceedings and the Amended Resolution**

112. Plaintiffs filed the administrative due-process complaint on September 2, 2025, challenging the 2024-2025 and 2025-2026 IEPs, public-placement offers, failures to evaluate and provide services, and resulting denials of FAPE.

113. The ALJ conducted six administrative trial sessions on May 20 and 21, June 22, 23, and 24, and July 7, 2026.

114. The record includes the challenged IEPs, IEP team/COMPU meeting minutes, evaluations, provider recommendations, progress reports, Capable Kids proposal, correspondence, placement documents, and electronic recordings.

115. The ALJ issued the initial Final Resolution and Order on July 30, 2026.

116. On July 30, 2026, plaintiffs moved for a nunc pro tunc correction of the Capable Kids monthly tuition amount.

117. On August 5, 2026, the ALJ granted that request and entered the Amended Resolution.

118. The Amended Resolution clarifies that the direct-payment obligation covers services from August 2025 through May 2026 at $6,000 per month and orders compliance within thirty working days after submission of required payment documentation.

119. On August 7, 2026, plaintiffs filed a second administrative due-process complaint, QEE-2627-02-09-00197, challenging PRDOE's proposed IEP and public placement for the 2026-2027 school year and requesting pendency protection under 20 U.S.C. § 1415(j).

120. On September 14, 2026, Administrative Law Judge Javier Abraham Torres Rivera issued an Interlocutory Resolution recognizing Capable Kids as UJAH's then-current educational placement during the second administrative case and any subsequent judicial review, and ordered

PRDOE to process the required stay-put financing within ten working days.

121. The Interlocutory Resolution expressly reserved all merits issues concerning the 2026-2027 IEP and public-school offer for adjudication in the second administrative proceeding. Plaintiffs therefore seek neither stay-put relief nor adjudication of those current-year merits in this action.

122. Plaintiffs have no remaining controversy in this action concerning the amount or structure of the 2025-2026 Capable Kids direct-payment obligation.

123. The Amended Resolution denied compensatory relief for 2024-2025 solely because Mrs. Hernández chose home education.

124. Although the ALJ found the 2024-2025 IEP deficient, she did not decide whether that deficiency denied UJAH a FAPE or whether PRDOE satisfied IDEA's procedural requirements before Mrs. Hernández chose home education.

125. The ALJ did not evaluate whether the IEP team was properly constituted; whether present levels were accurate and complete; whether the IEP contained measurable annual academic and functional goals; whether behavior, AT, supplementary aids, and assistant needs were adequately considered; whether prior written notice was provided; or whether the process afforded meaningful parental participation.

126. The ALJ therefore omitted the first part of the controlling Rowley analysis.

127. The ALJ also omitted the substantive Endrew F. inquiry even though she recounted

testimony that the 2024-2025 IEP had no goals.

128. The Amended Resolution contains no cogent and responsive explanation for how a goal-less, incomplete, and conditionally supported IEP could have been reasonably calculated to enable appropriate progress in light of UJAH's circumstances.

129. By treating homeschooling as dispositive, the ALJ reversed IDEA's order of analysis and effectively allowed the parent's response to cure or excuse the agency's earlier failure to make FAPE available.

130. That approach conflicts with IDEA's affirmative allocation of responsibility to PRDOE and with authority recognizing that withdrawal or resort to an alternative placement does not automatically extinguish a compensatory claim for the preceding deprivation.

131. The ALJ further failed to reconcile her no-FAPE conclusion with the admitted absence of goals, the IEP's material omissions, and the educational opportunity lost during the entire 2024-2025 school year.

132. The ALJ also denied or omitted compensatory relief for six acknowledged psychological sessions, delayed occupational-sensory and dysphagia services, AT and ABA evaluation failures, educational-assistant support, and ESY deprivation.

133. Plaintiffs remain aggrieved by those legal errors, omissions, and adverse remedial determinations.

## STANDARD OF REVIEW

134. Under 20 U.S.C. § 1415(i)(2)(C), the Court must receive the administrative record, hear additional evidence at a party's request, and grant appropriate relief based on the preponderance of the evidence.

135. IDEA judicial review is an exercise of involved oversight. The Court gives due weight to educational findings while independently determining whether IDEA's legal requirements were satisfied.

136. Questions dominated by law receive plenary review, while fact-dominated mixed questions receive greater deference along a continuum.

137. The proper sequence under Rowley, the legal effect of procedural violations, the Endrew F. standard, the availability of compensatory relief, mootness, and the legal effect of a parent's resort to homeschooling are law-dominated questions.

138. Whether the 2024-2025 IEP was reasonably calculated to enable appropriate progress must be judged prospectively from the information available when it was developed, including UJAH's known needs and the IEP's actual contents.

139. Administrative findings merit reduced or no deference when internally inconsistent, unsupported by the record, or founded on an incorrect legal premise.

140. Compensatory education is prospective equitable relief replacing education and services lost during a past denial of FAPE and remains available after the affected school year

ends.

**ISSUES PRESENTED FOR JUDICIAL REVIEW**

141. Whether the ALJ erred by failing to perform Rowley's threshold procedural inquiry for the 2024-2025 IEP and placement.

142. Whether PRDOE's failures to properly constitute the COMPU, provide complete present levels and measurable goals, evaluate suspected needs, specify supplementary aids and assistant support, issue prior written notice, and ensure meaningful parental participation impeded UJAH's right to FAPE, significantly limited parental participation, or deprived him of educational benefit during the 2024-2025 school year.

143. Whether the 2024-2025 IEP satisfied Endrew F. when PRDOE's own witness acknowledged that it had no goals and the ALJ offered no cogent and responsive explanation of how the IEP could produce appropriate progress.

144. Whether Mrs. Hernández's decision to homeschool UJAH after receiving a deficient program relieved PRDOE of its affirmative FAPE duty or waived UJAH's right to compensatory education.

145. Whether the ALJ erred by denying compensatory education for the full 2024-2025 FAPE deprivation.

146. Whether the ALJ erred by denying or omitting compensatory relief for unprovided or delayed psychological, occupational-sensory, dysphagia, AT, ABA, behavioral, and assistant-

related services during 2025-2026, and by conditioning future AT, ABA, and assistant matters upon COMPU agreement despite PRDOE's prior refusal.

147. Whether the ALJ erred by treating the summer-2026 ESY claim as academic despite the continuing availability of compensatory relief.

148. Whether plaintiffs are entitled to declaratory, compensatory, and other final equitable relief limited to those exhausted past deprivations, without disturbing the favorable 2025-2026 private-placement rulings or adjudicating the 2026-2027 merits.

## FIRST CAUSE OF ACTION:
## JUDICIAL REVIEW OF THE 2024-2025 FAPE DENIAL AND DENIAL OF COMPENSATORY EDUCATION

149. Plaintiffs re-allege and incorporate every preceding allegation.

150. Plaintiffs are parties partially aggrieved by the adverse findings, omissions, and remedies in the August 5, 2026 Amended Resolution.

151. PRDOE denied UJAH a FAPE during 2024-2025 by failing to develop and offer, through compliant procedures, an IEP and placement reasonably calculated to enable progress appropriate in light of his circumstances.

152. The ALJ committed legal error by failing to apply Rowley's two-part analysis and by substituting the mother's later homeschooling decision for the required inquiry into PRDOE's antecedent compliance.

153. The ALJ further erred by failing to apply Endrew F. to the concededly goal-less

and materially incomplete 2024-2025 IEP.

154. Mrs. Hernández's unrepresented decision to homeschool after PRDOE's deficient offer neither discharged PRDOE's FAPE obligation nor waived UJAH's compensatory remedy.

155. PRDOE's failures to provide complete present levels, measurable annual goals, properly constituted COMPU participation, meaningful parental participation, prior written notice, evaluations, and specified supplementary aids and services denied UJAH a FAPE during 2024-2025.

156. The ALJ erred by denying compensatory education for that completed, full-school-year deprivation and by treating the mother's response to PRDOE's deficient offer as eliminating the remedy.

157. Because individualized compensatory education can remedy UJAH's lost educational benefit, the 2024-2025 controversy remains live, justiciable, and redressable.

158. Plaintiffs are entitled to a declaration that PRDOE denied UJAH a FAPE during 2024-2025, reversal of the adverse compensatory ruling, and an individualized compensatory award calculated to restore the educational and functional benefits lost.

159. The relief requested under this cause of action does not seek review or modification of the favorable Capable Kids determinations for 2025-2026 and does not reach the 2026-2027 merits pending in the second administrative proceeding.

## SECOND CAUSE OF ACTION: JUDICIAL REVIEW OF RELATED-SERVICE AND ESY

160. Plaintiffs re-allege and incorporate every preceding allegation.

161. During the 2025-2026 school year, PRDOE failed or refused to timely evaluate and provide AT, ABA, educational-assistant support, psychological therapy, occupational therapy with a sensory approach, dysphagia therapy, and ESY services required to address UJAH's identified educational needs.

162. As of the filing of this complaint, PRDOE has neither evaluated UJAH for assistive technology nor provided an ABA evaluation or therapy.

163. The administrative record and the Amended Resolution identify those controversies, including six acknowledged compensatory psychological-therapy sessions, delayed or unprovided occupational-sensory and dysphagia services, unresolved AT and ABA evaluations, assistant-related needs, and the complete absence of ESY services during summer 2026.

164. The ALJ's direction that AT, ABA, and assistant matters be processed prospectively only if a future IEP team agreed did not remedy the completed deprivations, and the passage of summer did not moot the ESY claim because effectual compensatory relief remained available.

165. Plaintiffs are entitled to reversal or modification of those adverse rulings and omissions and to individualized compensatory educational and related services, including the acknowledged psychological sessions, relief for delayed occupational-sensory and dysphagia

services, compensatory assistant-related support, AT and ABA evaluations necessary to formulate the remedy, and services equivalent to the ESY program UJAH should have received.

**THIRD CAUSE OF ACTION: COMPLETE ADMINISTRATIVE RECORD AND CERTIFIED ENGLISH TRANSLATION**

166. Plaintiffs re-allege and incorporate every preceding allegation.

167. IDEA requires this Court to receive the complete record of the administrative due process proceedings. See 20 U.S.C. § 1415(i)(2)(C)(i); 34 C.F.R. § 300.516(c)(1).

168. The record must include all pleadings, motions, orders, documentary exhibits, admitted and identified evidence, IEP team/COMPU records, and complete electronic verbatim recordings of all six hearing sessions. See 20 U.S.C. § 1415(i)(2)(C)(i) (explicitly requiring that, in any judicial review action brought by an aggrieved party, the reviewing court "shall receive the records of the administrative proceedings"); 20 U.S.C. § 1415(h)(3), 34 C.F.R. § 300.512(a)(4) (guaranteeing all parties to a due process hearing "the right to a written, or, at the option of the parents, electronic verbatim record of such hearing" at no cost). See LCSB v. Bynkua, 2024 U.S. Dist. LEXIS 90918, *20–*22 (E.D. Va. May 20, 2024) (explaining that a complete administrative record under IDEA encompasses all adversarial pleadings, pre-hearing motions, orders in limine, documentary exhibits, IEP files, and the full multi-day hearing transcripts).

169. The administrative record is predominantly in Spanish.

170. Defendants possess or control the official administrative file and should be ordered to lodge a complete certified record and certified English translations of all material Spanish-

language portions within a deadline fixed by the Court. See Torres-Serrant v. Dept. of Edu. of P.R., 100 F. Supp. 3d 138, 142 (D.P.R. 2015), (finding the PRDOE liable for all the expenses of translating from Spanish to English the relevant portions of the administrative record for judicial review under the IDEA); Morales v. Dept. of Edu. of P.R., 2006 U.S. Dist. LEXIS 35731 at *13-*15 (D.P.R. May 31, 2006)(holding that "[t]he Puerto Rico Department of Education is the responsible agency" in an IDEA judicial review case for submitting the administrative records duly translated from Spanish to English).

**FOURTH CAUSE OF ACTION: ATTORNEY'S FEES AND COSTS**

171. Plaintiffs re-allege and incorporate every preceding allegation.

172. The Amended Resolution materially altered the parties' legal relationship by finding Capable Kids appropriate and ordering PRDOE to purchase the full 2025-2026 program at the corrected cost.

173. Plaintiffs are the prevailing parties as to that substantial administrative relief already obtained at the administrative level and seeks additional prevailing-party relief in this action.

174. Under 20 U.S.C. § 1415(i)(3)(B)(i)(I), the Court may award reasonable attorney's fees as part of the costs to a prevailing parent.

175. Plaintiffs request reasonable attorney's fees and recoverable costs incurred in the administrative proceeding and this judicial-review action, in an amount to be established by

subsequent application.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiffs respectfully request that this Honorable Court enter judgment in their favor and grant the following relief:

1. Receive the complete administrative record and reverse or modify only the adverse portions of the August 5, 2026 Amended Resolution identified in this Verified Complaint;

2. Order defendants to submit and file with the Court the complete certified administrative record, including all six hearing-session recordings, together with certified English translations of all material Spanish-language pleadings, motions, orders, hearing transcripts, and documentary evidence;

3. Declare that PRDOE denied UJAH a FAPE during the 2024-2025 school year;

4. Reverse the conclusion that Mrs. Hernández's resort to home education relieved PRDOE of its FAPE obligation or defeated UJAH's right to compensatory education;

5. Declare that the ALJ erred by failing to conduct the procedural analysis required by Rowley and the substantive analysis required by Endrew F.;

6. Reverse the denial of compensatory education for 2024-2025 and award one full school year of individualized compensatory special education, together with the additional educational and related services necessary to restore the benefits UJAH lost;

7. Declare that PRDOE failed to timely evaluate or provide the related and supplementary services identified in the administrative proceeding and reverse the denial or

omission of compensatory relief for those deprivations;

8. Order PRDOE to provide the six acknowledged compensatory psychological-therapy sessions and individualized compensatory services for delayed or unprovided occupational-sensory, dysphagia, behavioral, and educational-assistant support;

9. Order, at public expense and within a definite period, AT and ABA evaluations to identify and formulate the assistive technology devices, services, training, and behavioral supports needed to remedy the 2025-2026 deprivations;

10. Declare that the summer 2026 ESY claim remained live and award compensatory educational and related services equivalent to those PRDOE failed to provide;

11. Retain jurisdiction to ensure timely formulation and implementation of the final compensatory remedy awarded in this action;

12. Award plaintiffs their reasonable attorney's fees and recoverable costs incurred in the administrative proceeding and this judicial-review action under 20 U.S.C. § 1415(i)(3)(B); and

13. Grant any other just and appropriate equitable relief.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 17th day of September 2026.

/s/ Francisco J. Vizcarrondo Torres
Francisco J. Vizcarrondo-Torres
USDC No. 221714
PO Box 270302
San Juan, P.R. 00928-3102
Tel: 787-296-9521
fvizcarrondo@fjvtlaw.com
www.fjvtlaw.com